2009 VT 10

### In re HALE MOUNTAIN FISH AND GAME CLUB, INC.

[969 A.2d 691]

No. 08-098

¶ 1. February 2, 2009. Neighbors of the Hale Mountain Fish and Game Club ap-

peal the Environmental Board's decision that the Club need only apply for a limited Act 250 permit for discrete changes made to its property. This is the second time that we have considered neighbors' appeal of the Board's decision. In neighbors' first appeal, we held that the Board's initial decision regarding whether the Club need apply for an Act 250 permit insufficiently addressed whether, "since 1970 when Act 250 became law," changes made to the Club increased the intensity of use of the Club and resulted in greater noise emanating from the Club's property. *In re Hale Mountain Fish & Game Club, Inc.*, 2007 VT 102, ¶¶ 9-11, 182 Vt. 606, 939 A.2d 498 (mem.). We also held that the Board needed to address, in greater detail, the impact of the Club's improvements on nearby streams and wetlands. *Id.* ¶ 11. Therefore, we issued a remand order that required the Board to make additional findings and conclusions on these critical issues. *Id.* ¶ 12. Although it took no new evidence, the Board reviewed prior witness testimony with these issues in mind and filed supplemental findings supporting its original conclusion that a general Act 250 permit was unnecessary.[*] We affirm.

¶ 2. On remand, the Board made seventeen supplemental findings of fact, which may be summarized as follows. Based on the testimony of Club members whose memberships began prior to 1970 and continued afterwards, and some evidence of clay pigeons and spent ammunition at the site, the Board determined that the Club's activities had broadened but that

the intensity of use has remained about the same over the years. For example, the trap shooting area, rifle range, and pistol range accommodate approximately the same number of users now as they did prior to 1970. Additionally, the Board found that shifting from private to town plowing has not affected the number of users at the Club in winter. According to the Board, although the Club has engaged in various marketing efforts to increase participation, those efforts have done little more than maintain participation at pre-1970 levels. Neighbors offered no comparative testimony about pre-1970 membership and usage levels, and what they alleged were "increased" levels in later years. The Board found the members' testimony more persuasive for that reason.

¶ 3. On this second appeal, neighbors first assert that the Board's factual findings are not supported by sufficient evidence. In addition to generally disagreeing with the Board's factual findings, neighbors also argue that the Board erred in relying on the testimony of several of the Club's witnesses instead of their own testimony.

¶ 4. The Board, as a trier of fact, determines the credibility of witnesses and weighs the persuasive effect of evidence; this function is committed to its sound discretion. See *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 511, 346 A.2d 645, 648 (1975). Where, as here, a party contests the sufficiency of the evidence supporting the Board's factual findings, our standard of review is deferential. *In re Quechee Lakes Corp.*, 154 Vt. 543, 554, 580 A.2d 957, 963 (1990). We will uphold the Board's findings if they are supported by substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

¶ 5. The Board rejected neighbors' testimony, and accepted that of the Club's

---

[*] A development in existence before 1970 does not require an Act 250 permit; however, making a substantial change to such a pre-existing development necessitates an Act 250 permit for all, or part, of the development. See *In re Hale Mountain*, 2007 VT 102, ¶¶ 4-5; see also 10 V.S.A. § 6081(b).

members, on legitimate grounds; therefore, we cannot say that the Board's factual findings, which were based on the testimony, were not supported by substantial evidence. The factual issue before the Board was whether there had been a "substantial change" to a pre-existing project within the meaning of 10 V.S.A. § 6081(b). Because the Club has existed since the 1940's, the most salient testimony was that given by long-standing members of the Club with knowledge of the Club's activities over time. Neighbors' testimony was limited to activity occurring after they moved near the Club, which generally was after 1970, and in some cases not until the late 1980's. Although the testimony of the Club's members did not account for every month and year of the Club's existence, when considered in relation to the Board's original findings, their testimony and the additional physical evidence provided sufficient support for the Board's conclusion. The Board acknowledged that there had been changes in the Club's activities and membership over the years, but the level of intensity of the members' use and the concomitant noise, neighbors' principal complaints, could not be said to have increased over pre-1970 levels.

¶ 6. Neighbors also argue that *In re Black River Valley Rod & Gun Club, Inc.*, Findings of Fact, Conclusion of Law, and Order (altered) (Vt. Envtl. Bd. June 12, 1997), *available at* http://www.nrb.state. vt.us/lup/decisions/1997/2s1019-eb-fco-alt. pdf, a prior decision of the Board, precludes the Board from determining in this matter that changes to the Club did not permeate the project and therefore render the entire project — and not certain, discrete changes — subject to the Act 250 permitting process. In *Black River*, the Board declared:

> [we] ha[ve] consistently determined whether the activities and impacts which require a permit

as a substantial change can be differentiated from the pre-existing activity and its impact. Where they can, then only those activities and impacts require a permit. However, where the activities cannot be distinguished, the Board has concluded that the entire operation and all of its impacts require an Act 250 permit.

*Black River*, at 14. As we did in our decision of the parties' first appeal, *In re Hale Mountain*, 2007 VT 102, ¶ 5, we adopt, without further analysis, the standard enunciated in *Black River* for purposes of deciding this matter. Furthermore, on appeal, "[w]e will affirm the Board's legal conclusions when they are rationally derived from a correct interpretation of the law and supported by the findings." *In re Times & Seasons, LLC*, 2008 VT 7, ¶ 6, 183 Vt. 336, 950 A.2d 1189 (quotation omitted).

¶ 7. Here, the Board concluded that there were some substantial changes made to the property that required an Act 250 permit; however, according to the Board, all of the changes were discrete and did not require permitting the entire project. The Board discussed these changes in detail in its original decision. See *In re Hale Mountain Fish & Game Club*, Declaratory Ruling #435, Findings of Fact, Conclusions of Law, and Order at 3-13, 21 (Vt. Envtl. Bd. Aug. 4, 2005), *available at* http://www.nrb.state.vt.us/ lup/decisions/2005/dr435-fco.pdf. In *Black River* the Board found that increases in noise and intensity of use were directly connected to substantial changes made at that club. See *Black River*, at 16-17. Similar facts were absent, in the Board's view, in this case. Applying consistent and correct legal principles to each matter, the Board here determined that factual distinctions between the matters compelled different legal results.

¶ 8. As noted previously, see *supra*, ¶¶ 4, 6, our standard of review of the Board's decision is deferential. Neighbors have not demonstrated a basis on which to overturn either the Board's factual findings or the Board's legal conclusion that the Club has not made a substantial change to a pre-existing project that would subject the entire project to an Act 250 permitting process.

*Affirmed.*